**Robert Miles REIFF, Petitioner,**

v.

**G. V. RICHARDSON, Warden, Respondent.**

**Civ. No. 68–1526.**

United States District Court
C. D. California.

April 3, 1969.

Robert Miles Reiff, in pro. per.

Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Irving Prager, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

HAUK, District Judge.

Petitioner, at the time of filing his Petition for Writ of Habeas Corpus on

September 12, 1968, pursuant to 28 U.S. C. § 2241,[1] was in Federal custody as a mandatory release violator (i. e., parole violator). While the Court was awaiting the filing of the various responsive pleadings upon its Order to Show Cause, petitioner was mandatorily released from Federal custody under 18 U.S.C. § 4164[2] and became a parolee thereunder on March 20, 1969. Before considering petitioner's contentions, it would be beneficial to summarize the relevant facts:

Upon his conviction for interstate transportation of securities in 1959, petitioner was sentenced to five years' imprisonment and five years' probation. In 1965, while still in Federal prison, he was convicted and received an additional consecutive sentence of eighteen months and three years' probation for mail fraud. In the same year a New York State court convicted him and imposed a further one-year sentence for petty larceny, to be served after release from the Federal penitentiary.

On May 30, 1966, due to good-time allowances, petitioner was mandatorily released from Federal custody, under parole status, as required by 18 U.S.C. § 4164. This release took place at Federal Detention Headquarters in New York City, to which petitioner had been transferred from the United States Penitentiary at Lewisburg, Pennsylvania. At the time of this mandatory release, petitioner was taken into State custody and he commenced serving the previously imposed New York State court sentence for the petty larceny conviction.

In January 1967, petitioner was released by the New York authorities. He then absconded from his previously imposed Federal parole supervision in July 1967, and was returned to Federal prison as a mandatory release (i. e., parole) violator in January 1968.

Petitioner contends that he is entitled to have credit for the time served in State custody—seven months and twenty-eight days—applied against his original Federal sentence and present parole status; and that he thus is entitled to immediate release from the Federal parole restrictions.

After reviewing the Petition for Writ of Habeas Corpus, the Response, petitioner's Traverse to respondent's Response, and the arguments and authori-

1. 28 U.S.C. § 2241

"§ 2241. Power to grant writ
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
(b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.
(c) The writ of habeas corpus shall not extend to a prisoner unless—
(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
(5) It is necessary to bring him into court to testify or for trial."

2. 18 U.S.C. § 4164.

"§ 4164. Released prisoner as parolee
A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.
This section shall not prevent delivery of a prisoner to the authorities of any State otherwise entitled to his custody."

ties set forth by the parties, this Court is fully advised in the premises and thus orders that the Petition for Writ of Habeas Corpus be denied for the following reasons:

Petitioner contends that he was not "released" under the provisions of 18 U.S.C. § 4164, but instead was "transferred" to New York State custody under the provisions of 18 U.S.C. § 4082 [3], and thus that his Federal sentences were still running while he was in New York State custody. Petitioner primarily relies on 18 U.S.C. § 4281 as support for this contention. That statute provides:

"A person convicted under the laws of the United States shall, upon discharge from imprisonment, or release on parole, be furnished with transportation to the place of conviction or bona fide residence within the United States at the time of his commitment *or to such place within the United*

3. 18 U.S.C. § 4082

"§ 4082. Commitment to Attorney General; residential treatment centers; extension of limits of confinement; work furlough

(a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

(b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another.

(c) The Attorney General may extend the limits of the place of confinement of a prisoner as to whom there is reasonable cause to believe he will honor his trust, by authorizing him, under prescribed conditions, to—

(1) visit a specifically designated place or places for a period not to exceed thirty days and return to the same or another institution or facility. An extension of limits may be granted only to permit a visit to a dying relative, attendance at the funeral of a relative, the obtaining of medical services not otherwise available, the contacting of prospective employers, or for any other compelling reason consistent with the public interest; or

(2) work at paid employment or participate in a training program in the community on a voluntary basis while continuing as a prisoner of the institution or facility to which he is committed, provided that—

(i) representatives of local union central bodies or similar labor union organizations are consulted;

(ii) such paid employment will not result in the displacement of employed workers, or be applied in skills, crafts, or trades in which there is a surplus of available gainful labor in the locality, or impair existing contracts for services; and

(iii) the rates of pay and other conditions of employment will not be less than those paid or provided for work of similar nature in the locality in which the work is to be performed.

A prisoner authorized to work at paid employment in the community under this subsection may be required to pay, and the Attorney General is authorized to collect, such costs incident to the prisoner's confinement as the Attorney General deems appropriate and reasonable. Collections shall be deposited in the Treasury of the United States as miscellaneous receipts.

(d) The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title.

(e) The authority conferred upon the Attorney General by this section shall extend to all persons committed to the National Training School for Boys.

(f) As used in this section—

the term "facility" shall include a residential community treatment center; and

the term "relative" shall mean a spouse, child (including stepchild, adopted child or child as to whom the prisoner, though not a natural parent, has acted in the place of a parent), parent (including a person who, though not a natural parent, has acted in the place of a parent), brother, or sister."

*States as may be authorized by the Attorney General.*

"He shall also be furnished with such suitable clothing as may be authorized by the Attorney General, and, in the discretion of the Attorney General, an amount of money not to exceed $100." (Emphasis added)

Petitioner contends that since he was not given transportation, suitable clothing, or money upon his release, he was in fact "transferred" and not "released" and thus his terms of Federal custody were not waived, tolled or suspended by the State custody.

■ Petitioner's argument is erroneous and clearly without merit. Section 4281 of Title 18, United States Code, does not create a right in the petitioner to be released at any particular place, or in any particular manner. The statute says that the person to be discharged may also be "furnished with transportation * * * to such place * * * as may be authorized by the Attorney General." This clause, when considered in light of 18 U.S.C. § 4164 certainly evidences no intent to waive, toll or suspend Federal parole jurisdiction. Section 4164 of Title 18, United States Code, provides as follows:

"A prisoner having served his term or terms less good-time deductions *shall, upon release, be deemed as if released on parole* until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.

*"This section shall not prevent delivery of a prisoner to the authorities of any State otherwise entitled to his custody."* (Emphasis added)

■ In the instant case, petitioner was transferred from the United States Penitentiary at Lewisburg, Pennsylvania, to the Federal Detention Headquarters in New York City pursuant to a detainer issued by the Clerk of the Supreme Court of the State of New York. It is clear that the Attorney General had the power to make such a delivery of petitioner; and it is also clear that petitioner was in fact "released" pursuant to 18 U.S.C. § 4164 and *not* merely "transferred", pursuant to 18 U.S.C. § 4082(b), to another institution in order to serve the remainder of his Federal sentences. Petitioner was released "as if * * * on parole", and when he absconded from Federal parole supervision in July 1967, he was properly taken back into custody as a mandatory release (i. e., parole) violator.

■ Moreover, it is also apparent that petitioner is not entitled to credit for the time which he spent in State custody. The record discloses that petitioner's conditional release pursuant to 18 U.S.C. § 4164 was revoked by the United States Board of Parole prior to the expiration of the maximum term of his Federal sentences. That this action was properly within the power of the Board is made apparent by the following teaching of Welch v. Taylor, 292 F.2d 481, 483 (10th Cir. 1961), a case with a remarkably similar factual situation:

"This action was within the power of the Board, and the unserved balance of his federal sentence was not affected by petitioner's confinement in the Texas State Penitentiary during a portion of the period while he was on conditional release. Myers v. Hunter, 10 Cir., 199 F.2d 662. Had the petitioner complied with the conditions of his release, he would have completed his federal sentence even though he was imprisoned in the Texas State Penitentiary during a portion of the time that he was on conditional release."

Thus, it is clear that petitioner's contentions are without merit.

From the preceding analysis of petitioner's allegations, it is obvious that there are no grounds or reasons of any kind set forth to support the granting of a hearing or to support the issuance of a writ of habeas corpus.

Therefore, it is hereby ordered that the petition for writ of habeas corpus be, and the same is, denied.