### LYONS v. SQUIER, Warden.

### No. 596.

District Court, W. D. Washington, S. D.
March 23, 1944.

558

Richard Willard Lyons, pro se.

J. Charles Dennis, U. S. Atty., and Guy A. B. Dovell, Asst. U. S. Atty., both of Tacoma, Wash., for respondent.

LEAVY, District Judge.

This petition for discharge on writ of habeas corpus deals with computation of "good time" and involves the effect of the imposition of a sentence for an escape, while serving a sentence upon a previous conviction.

The petitioner was first convicted and commenced to serve a sentence on June 7, 1937, for a violation of 18 U.S.C.A. § 315. The sentence was imposed in the United States District Court for the Southern District of California, Central Division. He escaped from custody during the service of this sentence on September 28, 1939, after having served two years, three months and twenty-one days of a five year sentence.

The petitioner was recaptured on November 10, 1939, and later charged with the offense of escaping, under the provisions of the Criminal Code, 18 U.S.C.A. § 753h. He was held as a federal prisoner in custody, apparently awaiting indictment and trial, in the County Jail, Latah County, Idaho, until the 14th day of May, 1940, at which time he pleaded guilty and was given a sentence of eighteen months on the escape charge. This sentence made no reference whatever as to when it would commence to run, nor as to the unexpired term of the sentence which had previously been imposed in the District Court of California, from which petitioner escaped. The petitioner was forthwith taken to the Fed-

eral Penitentiary at McNeil Island, Washington.

The maximum term of the original sentence which the petitioner was serving at the time of his escape would have expired on July 18, 1942, making no allowance for 480 days "good time" deduction. The court, in imposing sentence on the escape charge, apparently assumed that the prisoner had permanently and irrevocably forfeited such "good time" allowance, since no reference was made in such sentence to either "good time" or the time when it should commence to run, even though the statute expressly covers such a situation.

On July 8, 1942, petitioner was given a conditional release by reason of having had restored to him the 480 days of "good time". Such conditional release recited the expiration date thereon as September 24, 1942. This was an error, and it was later corrected by requiring the petitioner to sign a new conditional release showing the expiration date as of January 17, 1944.

On December 29, 1942, a violation of parole warrant was issued and on authority of this warrant petitioner was again taken into custody on the 14th day of June, 1943, and delivered to the United States Penitentiary at McNeil Island, on July 2, 1943. The records indicate that the petitioner's "good time" allowance of 480 days was declared forfeited, due to his failure to comply with the terms of his parole.

He was taken into custody on the 10th day of November, 1939, following his escape, and brought to trial and convicted on a charge of escape on the 14th day of May, 1940. In this instance he was actually in custody of the United States authorities for a period of six months and four days in the Latah County jail.

After conviction on the escape charge, he was returned to the federal penitentiary on the 14th day of May, 1940, where he continued to serve until the 8th day of July, 1942, thus serving two years, one month, and twenty-four days. On the last named date his good time was restored by the Attorney General, and he was again released on conditional parole. He was thereafter taken into custody again as a parole violator on the 14th day of June, 1943, and is still in custody. Upon this last confinement, up to and including January 20, 1944, the date of filing the petition herein, he has served seven months and six days.

Summarizing the time actually served in federal custody, we have:

First service at McNeil Island, Wash., 2 yrs., 3 mos. and 21 days

Latah County Jail, Idaho, 6 mos., 4 days

Second Service, McNeil Island, 2 years, 1 mo., 24 days

Third Service, McNeil Island, 7 mo., 6 days

or a total of 5 years, 6 months and 25 days.

The foregoing figures indicate that to January 20, 1944, the defendant has actually served in confinement as a federal prisoner the full five year sentence originally imposed upon him, and six months and twenty-five days on account of the escape sentence. The eighteen months' sentence imposed upon the petitioner for the violation of 18 U.S.C.A. § 753h, when translated into days, would be 548 days. Assuming the petitioner's conduct entitles him to "good time" on this sentence, he would have a credit of 108 days, which would be the allowance provided in 18 U.S.C.A. § 710, of six days for each month of the eighteen months' sentence, leaving a balance of 440 days to serve, of which he had served 220 days to the date of filing his petition herein. There remained a balance of 220 days left to serve, which would entitle the petitioner to his release on parole about August 27, 1944. If the petitioner's conduct is not such as to entitle him to the benefit of "good time", and he be required to serve the full eighteen months' sentence imposed, the expiration date of such sentence would be on or about December 22, 1944.

When this petitioner was before this court upon a previous application, the court erroneously calculated the time when the petitioner would be entitled to release from custody as of January 17, 1944. Because of such erroneous finding, the application herein was filed by the petitioner.

■ The agents and representatives of the Department of Justice in this case erroneously sought to give application to 18 U.S.C.A. 710, which provides: "When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated."

The language above quoted can have no application in a situation such as is here presented, where a sentence is imposed upon one who makes an escape from a sentence which he is already serving, because if it did, it would have the effect of nullifying both the intent of Congress and the express provisions of 18 U.S.C.A. § 753h which is a much later enactment, dealing with prisoners escaping or attempting to escape. This section specifically provides: "The sentence imposed hereunder shall be in addition to, and independent of any sentence imposed in the case in connection with which such person is held in custody at the time of such escape or attempt to escape. If such person be under sentence at the time of such offense, the sentence imposed hereunder shall begin upon the expiration of, or upon legal release from, any sentence under which such person is held at the time of such escape or attempt to escape."

■ From the above quoted language, it is clear that Congress did not intend that there should ever be a restoration of "good time" to a prisoner who had forfeited the same by reason of escaping, and was thereafter convicted of the independent offense of "escape." To hold otherwise would be, for all practical purposes, to nullify the provisions of the Act that require an independent sentence to be served only upon the expiration of the sentence from which such prisoner made an escape. If the prisoner be allowed parole before having finally served the maximum of his original sentence, it would result in a hiatus between the time of his release on parole and the commencement of the service of his sentence on the escape conviction. On the other hand, to continue the prisoner in confinement when he had served his minimum sentence on the original conviction, and have such continued confinement apply to his escape sentence, would result in the prisoner's serving two sentences concurrently, in direct violation of the Congressional enactment providing for an additional and independent sentence.

Recent decisions that throw light upon this issue are: Gray v. Swope, D.C., 28 F.Supp. 822; Carroll v. Zerbst, 10 Cir., 76 F.2d 961; Swope v. Lawton, 9 Cir., 83 F. 2d 814; Aderhold v. Hudson, 5 Cir., 84 F.2d 559; Clark v. Surprenant, 9 Cir., 94 F.2d 969; Douglas v. King, 8 Cir., 110 F.2d 911, 127 A.L.R. 1200.

■ This opinion will constitute the court's findings of fact and conclusions of law herein, and it, therefore, follows that

the petitioner's application for discharge by a writ of habeas corpus is premature. The application for discharge is denied and the petition dismissed.

The dates when he would be entitled to discharge either by virtue of having served his minimum sentence, or the maximum sentence, as stated herein, are only approximate, and can not be taken as exact dates, since the court has not assumed the responsibility of making exact calculations.

A proper interpretation of the law, when applied to a set of facts such as we have here, recognizing the independent nature of a sentence imposed for a violation of 18 U.S.C.A. § 753h, and, likewise, giving application to the provisions of 18 U.S.C.A. § 710, dealing with aggregate sentences, and calculating good conduct allowance, would have avoided the confusion in this case.

An uncertified copy of this opinion will be served upon the petitioner by mail, and the United States Attorney may present an order dismissing the petition.