748

Owen H. Bickel, in pro. per.

Frederick V. Follmer, U. S. Atty., of Scranton, Pa., and Herman F. Reich, Asst. U. S. Atty., of Lewisburg, Pa., for respondent.

WATSON, District Judge.

This case is before the Court upon a petition in which the Petitioner alleges illegal imprisonment, and from which he seeks relief.

Petitioner avers in his petition that he was sentenced on April 10, 1937, to a term of one year and one day; that, on April 25, 1937, while en route to a Federal Penitentiary, he escaped, or attempted to escape, and was immediately recaptured, and later sentenced to a term of three years, to be served consecutively with the first sentence imposed; and that this would place the maximum release date April 10, 1941. Precisely when petitioner was released is not clear, but it is obvious that he was released prior to the maximum release date, for petitioner has been imprisoned for a violation of his parole, or conditional release, which occurred March 25, 1941, sixteen days before the expiration of the maximum release date.

Petitioner now advances a novel theory to show that his final release date should have been January 28, 1941, a date prior to his violation of parole or conditional release, and that he is, therefore, presently unlawfully restrained for "violation" of parole.

Petitioner was not deprived of his "good time" on the original sentence, and the original sentence and escape sentence were aggregated as a total of four years and one day, 18 U.S.C.A. § 710[1] so that he received a deduction of seven days per month for the entire four years and one day period. If they had not been aggregated, the deduction would have been only six days for each month on the one year and one day sentence. Petitioner contends, however, using an interpretation of Lyons

[1] 18 U.S.C.A. § 710, " * * * When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated." 18 U.S.C.A. § 753h, the Escape Statute mentioned in Note 2 is a much later statute than 18 U.S.C.A. § 710, and should, therefore, be construed as amending and modifying Section 710.

v. Squier, D.C., 54 F.Supp. 557, 559, the only case he cites, that the sentence imposed for the escape should have commenced January 28, 1938. In the Lyons case, supra, the Court quoted the "Escape Statute",[2] and reasoned that "Congress did not intend that there should ever be a restoration of 'good time' to a prisoner who had forfeited the same by reason of escaping, and was thereafter convicted of the independent offense of 'escape'.[3] To hold otherwise would be * * * to nullify the provisions of the Act that require an independent sentence to be served only upon the expiration of the sentence from which such prisoner made an escape. If the prisoner be allowed parole before having finally served the maximum of his original sentence, it would result in a hiatus between the time of his release on parole and the commencement of the service of his sentence on the escape conviction. On the other hand, to continue the prisoner in confinement when he had served his minimum sentence on the original conviction, and have such continued confinement apply to his escape sentence, would result in the prisoner's serving two sentences concurrently, in direct violation of the Congressional enactment providing for an additional and independent sentence."[4]

Petitioner now claims that his sentence for the escape commenced January 28, 1938, the date on which he claims he finished serving the sentence of one year and one day less accrued "good time". Since he was not released on that date, petitioner contends he started on the service of the three year sentence for escape and, by reason of the Lyons case, supra, which in his theory prohibits the beginning of one sentence before the termination of the other, claims that the good time earned on the original one year and one day sentence, was simply erased from the record, with the conclusion that the final release date then became January 28, 1941, three years from the commencement of the service of time for the escape by Petitioner's theory.

A calculation of good time by aggregation which increases the total good time as mentioned above is to the advantage of the petitioner by increasing the time served outside the prison walls, and, having accepted a conditional release for such good time period, he is bound by the parole provisions under 18 U.S.C.A. § 716b, as stated in King v. United States, 69 App. D.C. 10, 98 F.2d 291, 293: "It is true that prisoners released for good conduct are subjected to the same treatment, during the remainder of their terms, as prisoners released on parole. * * * For any conduct which would be a violation of parole, they may be rearrested and required to serve out their maximum terms." See also United States v. Barc, 6 Cir., 141 F.2d 480, certiorari denied 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581.

Where a prisoner's good time is not forfeited, and the two sentences are aggregated so as to increase the period during which he is released from the penitentiary on what is called a conditional release parole, he cannot, when subsequently returned for a violation of parole, successfully contend that the maximum release date on the two sentences served consecu-

2 18 U.S.C.A. § 753h. "* * * The sentence imposed hereunder [for escape] shall be in addition to and independent of any sentence imposed in the case in connection with which such person is held in custody at the time of such escape or attempt to escape. If such person be under sentence at the time of such offense, the sentence imposed hereunder shall begin upon the expiration of, or upon legal release from, any sentence under which such person is held at the time of such escape or attempt to escape."

3 While ordinarily good time is forfeited on the sentence being served when the escape occurs, the forfeiture of good time in such case is not mandatory under the provisions of the "Escape Statute", Note 2. The statute allowing deductions in time for good conduct, 18 U. S.C.A. § 710, is mandatory only in one respect, which is the mandatory granting of good time if the prisoner's record is clear.

4 This court sees no reason why the words "upon legal release from" of the Escape Statute, Note 2, cannot be construed to mean upon legal release from the prison term being served for any sentence under which such person is held at the time. This obviates any need for the argument in Lyons v. Squier, supra.

tively is prior to the expiration of the total of such two sentences. The maximum release date would still be at the expiration of the total of the two sentences, and the prisoner when given conditional release would be on parole during the balance of that period. To reach any other conclusion would require a calculation of two independent sentences as being in part concurrent and, as pointed out in Lyons v. Squier, supra, such a conclusion cannot be reached in connection with a sentence for escape. A fortiori, the date of the parole violation, March 25, 1941, of necessity fell within this maximum period, the earliest possible maximum expiration date being April 10, 1941.

The petitioner, upon leaving the penitentiary, accepted the conditional release for whatever period remained to be served of the maximum of the total of the two sentences, and, having violated the conditions of his release within the period thereof, he was required, pursuant to the provisions of Title 18 U.S.C.A. § 723c, to serve the unexpired term of his imprisonment when returned to the custody of the Attorney General upon execution of the violator warrant.

Now, August 12, 1946, the prayer of the petition is denied, and the petition is dismissed.